**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **CONGRUENT MEDIA RESOURCING LLC,**<br><br>                    Plaintiff,<br>    v.<br><br>**ZIMPERIUM, INC.,**<br><br>                    Defendant. | C.A. No. 3:26-cv-1920<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Congruent Media Resourcing LLC files this Original Complaint for Patent Infringement against Zimperium, Inc. and would respectfully show the Court as follows:

## I.   THE PARTIES

1.      Plaintiff Congruent Media Resourcing LLC ("Plaintiff") is a Texas limited liability company with a principal place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

2.      On information and belief, Defendant Zimperium, Inc. ("Defendant") is a corporation organized and existing under the laws of Delaware with its principal place of business at 4055 Valley View, Dallas, Texas 75244. Defendant has a registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

## II.   JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

1

4. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant maintains a place of business at 4055 Valley View, Dallas, Texas 75244.

5. Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in Texas and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within Texas and this District. Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 4055 Valley View, Dallas, Texas 75244. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.   UNITED STATES PATENT NO. 9,135,418

8. Plaintiff incorporates the above paragraphs herein by reference.

9.      On September 15, 2015, United States Patent No. 9,135,418 ("the '418 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '418 Patent is titled "System and Method for Creating Secure Applications."  A true and correct copy of the '418 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10.      Congruent Media Resourcing LLC is the assignee of all right, title, and interest in the '418 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '418 Patent.  Accordingly, Congruent Media Resourcing LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '418 Patent by Defendant.

11.      The invention in the '418 Patent relates to systems and methods for creating secure workspaces and applications, including the management and enhancement of same.  (Ex. 1 at 1:16-19).  The goal of the '418 Patent is to reduce security breaches by creating secure workspaces and applications.  (*Id.* at 1:16-38).  To do this, the '418 Patent discloses imposing one or more intercepts that convert an unsecured target application to a secure application.  (*Id.* at 1:54-57).  An intercept may be considered as an actual replacement of existing instruction or a new instruction that may interrupt program flow and conditionally return control to the program flow.  (*Id.* at 1:66-2:3).  By adding an intercept, the behavior of the secure application can be different from the original behavior of the target application.  (*Id.* at 1:57-61).

12.      The '418 Patent further explains that when the intercept is added to the targeted application, the now secure application can be repackaged with the bound intercepts integrated with the original file.  (*Id.* at 2:4-6).  As a result of the repackaging, the intercepts may be physically inseparable from the original files following the repackaging of the secure application, which can

3

result in an immutable deployable entity. (*Id.* at 2:7-10). This feature can prevent the secure application from having the intercepts removed by an authorized party. (*Id.* at 2:10-11).

13. In addition, generating the secure application can preserve the operating system interactions that were originally defined for the target application and the operating system for which the target application was designed. (*Id.* at 2:11-15). Preserving the operating system interactions can ensure that the secure application, even with the modifications to secure it, will continue to work with its intended operating system and that original behavior that was designed into the target application may still be permitted to be performed with the secure application in keeping with the scope of any acquired policy enforcement mechanism. (*Id.* at 2:15-21).

14. The '418 patent provides details regarding how application securitization occurs. Specifically, it discloses that one way application wrapping may occur is via an automated process in which no source code is modified, thereby reducing programmer oversight and errors. (*Id.* at 12:19-26). Additionally, the '418 patent provides examples of this, including 1) replacing references to system services with references to a library that applies the necessary mechanisms and policies and 2) inserting secure references into the code of an application to replace non secure references. (*Id.* at 12:24-35). Specifically, this securitization process may include interposing system API calls to allow a secure framework to intercept and control application functions. (*Id.* at 21:43-49). This process may further include encryption for additional protection of applications. (*Id.* at 21:49-58). One major benefit may be that management layers may be injected onto the compiled applications, removing the need for source code or developer implemented application changes. (*Id.* at 12:36-47).

15. The '418 patent also discloses technical examples of the use of securing applications via an intercept. One example method is called byte code injection, which replacing

4

byte code API calls with intercepts.  (*Id.* at 22:45-51). This is particularly useful for applications formatted for the Android operating system.  (*Id.*; *also* Figure 11; 23:45-60).  Another disclosed technical method is to link replacement calls for native object code. (*Id.* at 22:51-57).  This method is useful for applications that use native code and do not run under a virtual machine.  (*Id.*).  An example of this type of injection is link injection, which replaces preexisting system calls or the inclusion of new instructions in an immutable entity. (*Id.* at 24:64-25:24).  The '418 Patent further discloses that linking order may be statically or dynamically linked, and that priority can be established during runtime.  (*Id.* at 25:6-17).  Finally, a system of obfuscation may prevent further modification or reversal of the securitization process.  (*Id.* at 25:15-17).

16.    The '418 patent further discusses the technical benefits of repackaging the target application during a reconstruction phase.  (*Id.* at 24:3-21).  This is performed by a repackager. (*Id.* at 3-7).  The repackager may be made of software or hardware elements and may be further modified by secure object references injected before.  (*Id.* at 24:7-9).  In addition, this reconstructed and modified application may need a new certificate to be trusted.  (*Id.* at 24:11-16).

### Asserted Claim

17.    Claim 9 of the '418 Patent claims:

A method of generating a secure application, comprising:

via a processor:

receiving a target application that is designed to interact with an operating system;

configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system; and

repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.

## IV.  COUNT I
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,135,418)

18.     Upon information and belief, Defendant has directly infringed claim 9 of the '418 Patent in Texas, in this District, and elsewhere in the United States, by using and performing the claimed method by using the Zimperium MASP (Mobile Application Security Platform) ("Accused Instrumentality").

19.     **Direct Infringement**. As explained below, Zimperium uses Zimperium MASP to perform a method of generating a secure application.  Zimperium MASP leverages Runtime Application Self-Protection ("RASP") technology to protect applications.

## Zimperium

URL: https://www.zimperium.com/

### Company Introduction:

Founded in 2010 and headquartered in Dallas, TX, Zimperium provides mobile and application security solutions that provide real-time, on-device, and machine learning-based protection to mobile devices and applications from various types of threats. These threats include device, network, phishing, and malicious app attacks targeting Android, iOS, and Chromebook OSes, mobile endpoints, and apps. Zimperium's Mobile Application Protection Suite (MAPS) provides in-app protection solutions for mobile devices to build compliant, secure, and resilient mobile apps.

### Product Introduction:

The company offers a comprehensive suite of in-app protection capabilities through its Mobile Application Protection Suite (MAPS). These capabilities include No-Code App Shielding for safeguarding applications without additional code, Code Obfuscation for securing integral application code, and Data Obfuscation for protecting sensitive data. Runtime Application Self Protection (RASP) ensures security in hostile environments, while Tamper Resistance prevents the bypassing of business logos and repackaging of apps with malware. Threat Reporting & Insights provide valuable information on real threats and attacks. Malware Protection and Phishing Protection shield apps from various cyber threats. Cryptographic Key Protection ensures the safety of cryptographic keys, and Network Protection safeguards apps from unsafe networks.

(*E.g.*,        https://zimperium.com/hubfs/SPARK_Matrix_In_App_Protection_Zimperium.pdf?hsLang=en).

6

# Zimperium Mobile Application Security Platform

**Make Your Mobile Apps Secure, Compliant & Resilient**

https://zimperium.com/hubfs/MAPS/SB/GEN/Zimperium_Mobile_Application_Protection_Platform.pdf?hsLang=en

> Zimperium's Mobile Application Protection Suite (MAPS) provides 'shift left' security to Android and iOS mobile applications through a unified security platform that protects sensitive user information through app shielding techniques and advanced cryptographic key protection capabilities. Zimperium has received strong ratings across technology excellence and customer impact and has been positioned as a leader in the SPARK Matrix: In-App Protection, Q1 2024.

Quadrant Knowledge Solutions' SPARK Matrix™: In-App Protection, 2024

https://zimperium.com/maps



(*E.g.*,

https://zimperium.com/hubfs/MAPS/SB/GEN/Zimperium_Mobile_Application_Protection_Platform.pdf?hsLang=en  at 3).



(*E.g.*, https://zimperium.com/hubfs/MAPS/SB/GEN/Zimperium_Mobile_Application_ Protection_Platform.pdf?hsLang=en at 4).

20. Zimperium uses Zimperium MASP to perform the step of receiving a target application that is designed to interact with an operating system. As explained below, Zimperium MASP is designed to be embedded into a target application without modifying development code. The target application with which Zimperium MASP (Mobile Application Security Platform) is used interacts with the host operating system at the process and kernel interface level, for example, using OS facilities such as process memory, threads, file I/O, and networking.



(*E.g.*, https://zimperium.com/maps).

21.     Zimperium uses Zimperium MASP to perform the step of configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system.  Again, Zimperium MASP is designed to be embedded into a target application without modifying development code.  Zimperium MASP imposes one or more intercepts to convert a target application into a secure application.  Because the Zimperium MASP runs in-process, the Zimperium MASP uses the application's process memory, threads, file I/O, and networking stacks, and OS-mediated operations.  The capabilities and deployment steps of the Zimperium MASP depend on the underlying operating system and supported platforms because it uses OS-specific interfaces and integrations and therefore maintains the secure application interacting with the operating system.

The company operates in a highly competitive environment across multiple countries, making it almost impossible to ensure copyright and IP protection. Zimperium's zShield embeds advanced security defenses into applications, enabling them to run securely in zero-trust environments. It uses multiple methods including advanced code obfuscation and real-time intrusion detection to prevent tampering, reverse engineering, and other techniques used by cybercriminals to discover vulnerabilities and gain access to sensitive information and IP contained in mobile health apps.

https://lp.zimperium.com/hubfs/zShield_zKeyBox/CS/HC/Zimperium_Secures_Connected_App s_for_Leading_Medical_Device_Manufacture.pdf



https://zimperium.com/maps: Video: 1:51 – 2:03



(*E.g.*, https://zimperium.com/hubfs/MAPS/SB/GEN/Zimperium_Mobile_Application_Protection_Platform.pdf?hsLang=en).

22.     Zimperium uses Zimperium MASP to perform the step of repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.  For instance, after treatment from ZDefend, the application has additional security features to protect itself. Upon information and belief, protecting deployed apps prevents vulnerabilities in a way such that the intercepts are inseparable from the secure application.  For example, Zimperium MASP protects deployed apps by combining code protection, runtime threat detection, and encryption capabilities – the features that are integrated with the secure application and are inseparable.  Upon information and belief, Zimperium MASP repackages an application by imposing intercepts during an application's launch.  This makes the intercept an inseparable part of a running process.





https://zimperium.com/maps

# Mobile App Protection

Mobile App Protection Suite (MAPS) is the world's only complete platform for DevSecOps teams to build secure mobile apps. Purpose-built to protect your mobile apps across the entire application lifecycle—MAPS provides protection from development to runtime. By combining code protection, runtime threat detection, and encryption capabilities, MAPS delivers continuous, end-to-end security that safeguards your app before, during, and after deployment.

Generation of new applications

(*E.g.*, https://zimperium.com/maps).

. . . integrated with the secure application and are inseparable. . .

Application Security is based on runtime self-protection technology. The Application Security library is self-contained and independently protects its application, even if it becomes disconnected from the Application Security service. User data is never exposed outside the application, ensuring your apps remain compliant with data protection mandates

(https://trendmicro-appsec.awsworkshop.io/00_introduction/application_security.html).

23.     **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of

claim 9 of the '418 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed claim 9 of the '418 Patent. For example, Defendant provided marketing material and videos advertising that the Accused Instrumentality performs the claimed method of generating a secure application from a target application designed to interact with an operating system as claimed in claim 9 of the '418 Patent. (*Supra* ¶¶19-22 (identifying marketing materials)).

24.     On information and belief, since Defendant became aware of the '418 patent and the infringement at least as of the date of the service of the Complaint, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶19-22 (identifying marketing materials)).   Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '418 Patent by its customers.

25.     On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing

the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '418 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶19-22 (identifying marketing materials)).  As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '418 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes claim 9 of the '418 Patent, Defendant knew that each such new use was made and adapted for infringement of claim 9 of the '418 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶19-22 (identifying marketing materials)).  Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use.  (*Id.*).

26.    Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '418 Patent, *i.e.*, in an amount that by law cannot

14

be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

27.    Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '418 Patent, Plaintiff will be greatly and irreparably harmed.

28.    Plaintiff is only asserting a method claim and as such the marking requirements of 35 U.S.C. 287(a) do not apply. *Crown Packaging Technology, Inc. v. Rexam, Beverage Can Co.*, 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. 287(a) does not apply."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed.Cir. 1983) ("It is 'settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method." (*Quoting Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983)). Plaintiff has therefore complied with the marking requirements 35 U.S.C. 287(a).

## V.  **JURY DEMAND**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that claim 9 of United States Patent No. 9,135,418 has been infringed and is being infringed, either literally and/or under the doctrine of equivalents, directly and/or indirectly, by Defendant;

b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c.   That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d.   That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.   That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

June 10, 2026                                        Respectfully Submitted,

_/s/Neal G. Massand_
Neal G. Massand
Texas Bar No. 24039038
nmassand@nilawfirm.com
NI, WANG & MASSAND, PLLC
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

David R. Bennett (*Pro Hac Vice to be Filed*)
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com

*Attorneys for Plaintiff*
*Congruent Media Resourcing LLC*

16